HARTMAN & WINNICKI, P.C.
West 115 Century Road
Paramus, New Jersey 07652
Phone: (201) 967-8040
Fax: (201) 967-0590
Richard L. Ravin, Esq.
(RLR-8710)
Attorneys for
Defendant Alexander Dy

| | | |
|---|---|---|
| In re HENRY PETERS AND PAMELA PETERS, | : : : | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
| Debtors. | : : | Case No. 07-23531(RJ) Chapter 13 |
| | : | |
| HENRY PETERS and PAMELA PETERS, | : : : | Adv. Pr. No. 07-22 Adversary Proceeding |
| Plaintiffs, | : : : | |
| v. | : : | |
| ROLAND DAVID; NATIONAL COMMERCIAL BUSINESS CREDIT; R. DAVID & ASSOCIATES PA, LLC; FINANCIAL SERVICES GROUP, LLC; CREDIT MANAGEMENT & RECOVERY SERVICES, INC.; GOLDSTAR MORTGAGE; ALEXANDER DY; PNC BANK; CAROL ZAGORIC; JOANNE RAGGI; FGC COMMERCIAL MORTGAGE FINANCE; JOURNEYMAN TITLE AGENCY, INC.; CHICAGO TITLE INSURANCE COMPANY; LYNN LAZARO; JOHN DOE 1 through 10; and XYZ INC., ten names being fictitious and unknown to the plaintiffs, the person or parties intended being the persons or parties, if any, | : : : : : : : : : : : : : : : : : : : : : : : : : | DEFENDANT ALEXANDER DY'S BRIEF IN SUPPORT OF MOTION TO DISMISS |
| Defendants. | : | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..............................................ii

PRELIMINARY STATEMENT..............................................1

STATEMENT OF ALLEGATIONS IN AMENDED COMPLAINT....................3

ARGUMENT.........................................................6

POINT I:      STANDARD OF REVIEW ..................................6

POINT II:     COUNT I OF PLAINTIFFS' AMENDED ADVERSARY COMPLAINT
              FAILS TO STATE A CLAIM UPON WHICH RELIEF
              CAN BE GRANTED UNDER THE FEDERAL TRUTH IN
              LENDING ACT AGAINST ALEXANDER DY ...................8

              A.   Dy is Not Liable Under TILA Because
                   Dy is Not a "Creditor" Under the Act ..........8

              B.   The Court Lacks Jurisdiction to hear
                   the Truth In Lending Act Claim against
                   Alexander Dy ..................................9

POINT III:    COUNTS II, III and IV OF PLAINTIFFS'
              AMENDED ADVERSARY COMPLAINT FAIL TO
              STATE A CLAIM UPON WHICH RELIEF CAN BE
              GRANTED UNDER THE NEW JERSEY CONSUMER
              FRAUD AGAINST ALEXANDER DY ........................11

              A.   Plaintiffs Have Failed To State A
                   Claim Under N.J.S.A. 56:8.2 ..................11

              B.   Plaintiffs Have Failed To State A
                   Claim Under N.J.S.A. 56:8-2.22 ...............12

POINT IV:     COUNT V OF PLAINTIFFS' AMENDED ADVERSARY
              COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
              RELIEF CAN BE GRANTED UNDER THE FEDERAL
              REAL ESTATE SETTLEMENT PROCEDURES ACT
              AGAINST ALEXANDER DY ..............................14

POINT V:      COUNT VI OF PLAINTIFFS' AMENDED ADVERSARY
              COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
              RELIEF CAN BE UNDER THE FEDERAL RACKETEER

                    INFLUENCED AND CORRUPT ORGANIZATIONS ACT
                    AGAINST ALEXANDER DY ...............................15

POINT VI:           COUNTS SEVEN, EIGHT, AND NINE OF PLAINTIFFS'
                    AMENDED ADVERSARY COMPLAINT FAIL TO STATE
                    A CLAIM UPON WHICH RELIEF CAN BE GRANTED
                    AGAINST ALEXANDER DY ...............................19

          A.        Plaintiffs Failed to Plead Any Intentional
                    Misrepresentation Against Dy ...................19

          B.        Plaintiffs Failed to Plead a Case For
                    Conversion Against Dy .........................20

          C.        Plaintiffs Failed to Plead a Case for
                    Intentional Infliction of Emotional
                    Distress Against Dy ...........................21

CONCLUSION...................................................22

## TABLE OF AUTHORITIES

**Cases**

**Page**

Bell Atlantic Corp. v. Twombly,
127 S.Ct. 1995, 167 L.Ed. 2d 929 (2007)......................6

Conley v. Gibson, 355 U.S. 41
S.Ct. 99, 2 L.Ed.2d 80 (1957)...............................6

Commercial Ins. Co. of Newark v. Apgar,
111 N.J. Super. 108, (Law Div. 1970)**.......................**20

Gennari v. Weichert Co. Realtors,
288 N.J. Super. 504 (App. Div. 1996).......................12,
19

Glessner v. Kenny, 952 F.2d 702 (3d Cir.1991)...................18

Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.,
46 F.3d 258 (3d Cir.1995)..................................18

Neveroski v. Blair, 141 N.J. Super.
365, n. 3, (App. Div. 1976)................................13

Oldroyd v. Associates Consumer Discount Co./PA,
863 F.Supp. 237 (E.D.Pa., Sep 16, 1994)...................10

Phillips v. County of Allegheny,
515 F.3d 224 (3d Cir. 2008)................................6

Pinker v. Roche Holdings, Ltd.,
292 F.3d 361 n. 7.........................................6-7

Reid, 484 F.Supp. at 441..................................10

Young v. Hobart West Group, 385 N.J. Super. 448,
467-468 (App. Div. 2005).................................21

**STATUTES**

12 U.S.C. §2602(1)..........................................14

12 U.S.C. §2605...............................................14

12 U.S.C. §2605(i)(2).........................................14

12 U.S.C. §2614...............................................14

15 U.S.C. §1640(e)...........................................9, 10

15 U.S.C. § 1635(b)...........................................9

18 U.S.C. 1962(a)............................................16

18 U.S.C. 1962(d)............................................16

18 U.S.C. 1964...............................................17

35 <u>U.S.C.</u> §121............................................4

146 N.J. 64..................................................12

146 N.J. 495.................................................12

148 N.J. 582.................................................12

N.J.S.A. 56:8-2..............................................11

N.J.S.A. 56:8-1..............................................13

N.J.S.A. 56:8-2.22...........................................12

**<u>RULES</u>**

Rule 8.......................................................7

Rule 12(b)(6)................................................7

Fed. R. of Bankruptcy P. 7012(b)............................1

Fed. R. Bankr. P. 7009......................................19

Fed. R. Civ. P. 8...........................................6

Fed. R. Civ. P. 9(b)........................................19

Fed. R. Civ. P 12(b)(6). . . . . . . . . . . . . . . . . . . 1

**PRELIMINARY STATEMENT**

Defendant Alexander Dy ("Dy") moves this court for dismissal of the Amended Complaint (Docket Item 5, dated December 6, 2007, filed December 7, 2007, a copy of which is attached here to as Exhibit "A") in its entirety pursuant to Fed. R. of Bankruptcy P. 7012(b) and Fed. R. Civ. P 12(b)(6), for failure to state a claim upon which relief can be granted. By order of the court filed on May 9, 2008 (Docket Item 44), Dy had until May 12, 2008 to respond to the Amended Complaint.

The Amended Complaint alleges that the defendants, comprising title companies, mortgage brokers, lenders, representatives of the foregoing and Dy should be held liable under various theories for the Plaintiffs transferring their residence, a condominium unit, located at 10 Ashby Lane, Unit G, Bldg.15, Newark, New Jersey ("Property") to Dy on August 24, 2006, and then entering into a one year lease with Dy. This was the second such transfer and lease-back of the Property that Scott's entered into, the first being in 2004 with Pamela Peters' parents, and the repurchase of the Property by the Peters in 2005. If anyone was a victim in this case, it was Alexander Dy, who thought he was doing the right thing by

1

helping out the Peters, in a transaction set up and controlled

by defendant Rolland David.

2

## STATEMENT OF ALLEGATIONS IN AMENDED COMPLAINT

The Amended Complaint alleges no conduct or representations of Dy, prior to the closing on the sale of the Property from the Plaintiffs to Dy.  The only conduct referenced in the Amended Complaint against Dy is as to conduct following the closing, as follows:

> ¶8 Mr. Dy operates a business at 93 Main Street, Ridgefield Park, New Jersey.

> ¶38 [After the closing of the sale of the Property to Dy] Alexander Dy then called and threatened to evict Mr. & Mrs. Peters. Mr. and Mrs. Peters stated that they had been defrauded and demanded their home back.

> ¶39. [After the closing of the sale of the Property to Dy] Roland then called and offered to sell Mr. and Mrs. Peters their home back for $279,000.00. Dy had already financed their house for $279,000 as a first mortgage, $40,000.00 as a second mortgage and received $19,877.94 from the closing.

> ¶41. After the closing of the sale of the Property to Dy] Mr. and Mrs. Peters' were paying $750 a week in rent in order to keep from being evicted. Plaintiffs also paid "Association Fees" to the Condominium Association. Dy & Mr. David promised the Peters' that "Association Fees" would be included in their new mortgage payments, however, Defendants failed to pay anything to the association. The advanced payments ran out and the Peters' had to pay the association fees in order to avoid eviction by the Association.

3

¶45. Defendant Dy obtained a second mortgage
on the premises in the amount of $40,000.00
while Plaintiffs were current on their
monthly $3005.07 "rent" payment, depleting
the balance of the equity of the Plaintiffs'
home.

¶47. Despite knowledge that the Peters filed
the District Court complaint, Dy filed a
verified Landlord/Tenant complaint in State
Supreme Court verifying that no prior action
was pending. As a result of the false
verification, Dy obtained an eviction
judgment against plaintiffs.

¶100. Defendants intentionally deeded
Plaintiffs home in Dy's name and charged an
inflated rent price to force the Plaintiffs
out of their home.

¶101. Defendants intentionally sought to
deprive Plaintiffs completely of their home,
to eventually evict them and keep their
home.

In Paragraph No. 44 of the Amended Complaint, Plaintiffs

make a general allegation which are conclusory, not factual:

¶ 44. Upon information and belief, all
Defendants schemed and orchestrated this
fraudulent transaction or had direct
knowledge of the fraud being committed
against the Plaintiffs. They were involved
in creating and/or executing and/or
notarizing the fraudulent documents,
obtaining and providing the financing and
title, closing the transaction, making
unauthorized payments out of the mortgage
which Dy obtained on the house, and received
disbursements from the mortgage which Dy
obtained on the premises, which were not
reported on the HUD or TILA statements.

4

There are no specific allegations as to any conduct on the part of Dy.

**ARGUMENT**

**POINT I**

**STANDARD OF REVIEW**

In <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1995, 167

L.Ed. 2d 929 (2007), the Supreme court set forth a new standard

for deciding Rule 12(b)(6) motions, made applicable to adversary

proceedings in bankruptcy through Fed. R. Bankr. P. 700(b).  The

Third Circuit Court of Appeals addressed the new legal standard

for motions to dismiss in <u>Phillips v. County of Allegheny</u>, 515

F.3d 224, 233 (3d Cir. 2008).  As noted in the <u>Phillips</u> case,

"the Supreme Court rejected language that long had formed part

of the Rule 12(b)(6) standard, namely the statement in <u>Conley v.</u>

<u>Gibson</u>, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that a

complaint may not be dismissed 'unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief.' Id. at 45-46, 78 S.Ct.

99." <u>Philips</u>, 515 F3d at 230.  As the <u>Philips</u> court noted, "[i]t

remains an acceptable statement of the standard, for example,

that courts 'accept all factual allegations as true, construe

the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief.'" <u>Philips</u>

at 233, citing <u>Pinker v. Roche Holdings, Ltd.</u>, 292 F.3d 361, 374

n. 7, and <u>Twombly</u>, 127 S.Ct. at 1969 n. 8.  However, "[a]fter

6

Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Philips 515 F.3d at 234, quoting Twombly, 127 Sup. Ct. at 1969, n.8.

Significantly, the Supreme Court has added a "plausibility" component as it relates to the "showing" requirement of Rule 8 notice pleading.  The Philips court recognized that pursuant to the new standard, "a plaintiff 'must nudge [his or her] claims across the line from conceivable to plausible in order to survive a motion to dismiss.'" Phillips 515 F.3d at 234, quoting Twombly, 127 S.Ct. at 1974.  The "plausibility" requirement relates to the "showing" requirement of Rule 8, which requires notice of a claim and its grounds, as distinguished from "a pleader's 'bare averment that he wants relief and is entitled to it.'" Philips 515 F.3d at 234, quoting Twombly, 127 S. Ct at 1965.

Plaintiffs have failed to allege the necessary facts to allow the case to survive a Rule 12(b)(6) motion under any standard, but especially post Twombly, as none of the Counts in the amended Complaint set out a plausible case, on its face, against Alexander Dy.

POINT II

**COUNT I OF PLAINTIFFS' AMENDED ADVERSARY COMPLAINT
FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER
THE FEDERAL TRUTH IN LENDING ACT AGAINST ALEXANDER DY**

**A.    Dy is Not Liable Under TILA Because Dy is Not a "Creditor"
Under the Act**

Dy is not a "creditor" under the Truth in Lending Act

("TILA"), and, therefore, cannot be liable to Plaintiffs for any

TILA violation.   Section 1602(f) defines  "creditor" as follows:

> (f) The term "creditor" refers only to a
> person who both (1) regularly extends,
> whether in connection with loans, sales of
> property or services, or otherwise, consumer
> credit which is payable by agreement in more
> than four installments or for which the
> payment of a finance charge is or may be
> required, and (2) is the person to whom the
> debt arising from the consumer credit
> transaction is initially payable on the face
> of the evidence of indebtedness or, if there
> is no such evidence of indebtedness, by
> agreement.

There is no allegation in the Amended Complaint to support

either of the two conjunctive elements – that Dy regularly

extend consumer credit <u>and</u> that Dy is the person to whom the

mortgage was initially payable on the face of the mortgage.   The

Amended Complaint makes no such allegations against Dy.

Accordingly, the TILA claims should be dismissed against

Alexander Dy.

8

**B.    The Court Lacks Jurisdiction to hear the Truth In Lending
Act Claim against Alexander Dy**

As alleged in the Amended Complaint, ¶34, the subject loan
was closed on August 24, 2006.  The instant adversary proceeding
was not commenced until October 15, 2007, more than 13-1/2
months later, and more than 1-1/2 months out of time. According
to 15 U.S.C. §1640(e), the court lacks jurisdiction to hear any
claim which is not brought within one year.   Section 1640(e)
Jurisdiction of courts; limitations on actions; State attorney
general enforcement, provides in pertinent part:

> Any action under this section may be brought
> in any United States district court, or in
> any other court of competent jurisdiction,
> within one year from the date of the
> occurrence of the violation.

Plaintiffs allege failure to provide TILA disclosures, as
set forth in Amended Complaint, ¶¶51 and 52:

> 51. In the course of this consumer credit
> transaction, Defendants violated 15 U.S.C. §
> 1635(a) and Regulation Z § 226.23(b) by
> failing to deliver to the Plaintiffs two
> copies of a notice of the right to
> rescind....
>
> 52. In the course of this consumer credit
> transaction, Defendants required Plaintiffs
> to proceed with the home mortgage "rescue"
> purchase prior to disclosure of the actual
> financing terms and failed to deliver any
> "material" disclosures required by the Act
> and Regulation Z, including the
> following....

9

There is no allegation in the Amended Complaint as to when or in what manner Plaintiffs requested their alleged right of rescission against Alexander Dy.   Therefore, the only TILA allegation is the failure to make disclosures, which is time-barred under the one-year statute of limitations.   15 U.S.C. §1640(e).

The Pennsylvania District Court was faced with similar circumstances in Oldroyd v. Associates Consumer Discount Co./PA, 863 F.Supp. 237 (E.D.Pa., Sep 16, 1994).   The Oldroyd court held:

> The limitations period runs from the date of rescission only if the violation alleged is the failure of the lender to terminate its security interest upon rescission, as required by 15 U.S.C. § 1635(b). *See Reid,* 484 F.Supp. at 441. The Oldroyds do not allege such a violation, but only a failure to make required disclosures. Thus, the one year limitations period must run from the date of the complained-of violation: the failure to make those disclosures in November **\*241** of 1989. The Truth-in-Lending Act claim is time-barred and will be dismissed. [Footnote omitted.]

Here, as in the Oldroyd case, the TILA claims must be dismissed.

## POINT III

**COUNTS II, III and IV OF PLAINTIFFS' AMENDED ADVERSARY COMPLAINT
FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER THE
NEW JERSEY CONSUMER FRAUD AGAINST ALEXANDER DY**

Plaintiffs fail to make any allegations against Dy to

support a claim under the New Jersey Consumer Fraud Act ("CFA").

**A.   Plaintiffs Have Failed To State A Claim Under N.J.S.A.**

**56:8.2**

Section 8.2 of the CFA states, in pertinent part:

> The act, use or employment by any person of
> any unconscionable commercial practice,
> deception, fraud, false pretense, false
> promise, misrepresentation, or the knowing,
> concealment, suppression, or omission of any
> material fact with intent that others rely
> upon such concealment, suppression or
> omission, in connection with the sale or
> advertisement of any merchandise or real
> estate....

N.J.S.A. 56:8-2 (emphasis added).

Plaintiffs have made absolutely no allegations against Dy

as to any statements or conduct of Dy occurring prior to the

transfer of the Property on August 24, 2006.  There is no

allegation that Dy did anything in connection with the "sale or

advertisement" of any real estate.

Moreover, the CFA is designed to protect purchasers of real

estate, such as Dy, not sellers of real estate.  The CFA

protects purchasers from misrepresentations and fraudulent

conduct in connection with the sale or advertisement of real

estate.  Not just any erroneous statement will constitute

misrepresentation barred under Consumer Fraud Act section

prohibiting fraudulent conduct in connection with sale of real

estate; misrepresentation has to be one which is material to

transaction and which is statement of fact, found to be false,

made to induce buyer to make purchase. Gennari v. Weichert Co.

Realtors, 288 N.J. Super. 504 (App. Div. 1996), leave to appeal

granted 146 N.J. 64,  leave to appeal granted 146 N.J. 495,

affirmed as modified 148 N.J. 582.

**B.   Plaintiffs Have Failed To State A Claim Under
      N.J.S.A. 56:8-2.22**

      The Consumer Fraud Act, N.J.S.A. 56:8-2.22 provides as

follows:

>            It shall be an unlawful practice for a
> person in connection with a sale of
> merchandise to require or request the
> consumer to sign any document as evidence or
> acknowledgment of the sales transaction, of
> the existence of the sales contract, or of
> the discharge by the person of any
> obligation to the consumer specified in or
> arising out of the transaction or contract,
> unless he shall at the same time provide the
> consumer with a full and accurate copy of
> the document so presented for signature but
> this section shall not be applicable to
> orders placed through the mail by the
> consumer for merchandise.

(Emphasis added.)

      This section only applies to the sale of merchandise, and

is not applicable to real estate transactions.  The CFA defines

12

"merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1 does not include real estate. Dy's counsel could not find any reported New Jersey case which interprets "merchandise" to include real estate transactions. Moreover, it is noted that "or real estate" was added to Section 8.2 by amendment of the law in 1976, and was ruled by the Appellate Division prior to the amendment that "merchandise" did not include real estate. Neveroski v. Blair, 141 N.J. Super. 365, 377, n. 3, (App. Div. 1976), superseded by the aforementioned statutory amendment. Accordingly, Sections 8-2.11, 8-2.12, and 8-19, cited in the Amended Complaint (¶¶69, 74), are in applicable.

Plaintiffs have failed to state a viable cause of action under the Consumer Fraud Act against Dy, requiring dismissal of Counts II, III, and IV.

POINT IV

**COUNT V OF PLAINTIFFS' AMENDED ADVERSARY COMPLAINT
FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER
THE FEDERAL REAL ESTATE SETTLEMENT PROCEDURES ACT AGAINST
ALEXANDER DY**

Plaintiffs fail to state a claim upon which relief can be granted against Dy for violation of the Real Estate Settlement Procedures Act) ("RESPA").  Plaintiffs allege generally against the defendants that they have violated 12 U.S.C. §2605, and subject to the provision of 12 U.S.C. §2614.  (Amended Complaint ¶¶ 76 and 77.)

However, Plaintiffs have alleged no facts that Dy made a "federally related mortgage loan" as that term is defined by 12 U.S.C. §2602(1), such as one that is federally guaranteed, or that Dy is "servicer" of such loan, pursuant to 12 U.S.C. §2605(i)(2).  Thus, Dy cannot be liable under 12 U.S.C. §2605, and Count V of the Amended Complaint should be dismissed as against him.

14

POINT V

**COUNT VI OF PLAINTIFFS' AMENDED ADVERSARY COMPLAINT
FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE UNDER THE
FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
AGAINST ALEXANDER DY**

Plaintiffs make general, unsupported allegations that Dy and other defendants are liable under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiffs allege, "Defendants have violated 18 U.S.C. 1962(a) by racketeering, extortion and defrauding the Plaintiffs in a mortgage and real estate scam transaction, stealing Plaintiffs". (Amended Complaint, ¶87), and "The above named Defendants, have violated 18 U.S.C. 1962(d) by aiding and abetting the fraudulent mortgage and real estate property sale transactions which were devised by David.", (Amended Complaint, ¶89).

Title 18, U.S.C. Section 1962(a) provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting

15

> another to do so, shall not be unlawful
> under this subsection if the securities of
> the issuer held by the purchaser, the
> members of his immediate family, and his or
> their accomplices in any pattern or
> racketeering activity or the collection of
> an unlawful debt after such purchase do not
> amount in the aggregate to one percent of
> the outstanding securities of any one class,
> and do not confer, either in law or in fact,
> the power to elect one or more directors of
> the issuer.

(Emphasis added.)

Plaintiffs have failed to allege against Dy any of the elements of Section 1962(d).  The Amended Complaint does not allege against Dy any pattern of racketeering activity or collection of an unlawful debt which Dy has acted as a principal.  The Amended Complaint does not allege that Dy acquired any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.  Plaintiffs make only conclusory allegations general against all defendants that "Defendants have violated 18 U.S.C. 1962(a) by racketeering, extortion and defrauding the Plaintiffs in a mortgage and real estate scam transaction, stealing Plaintiffs ownership and equity in the house." (Amended Complaint, ¶ 87), and "The above named Defendants, have violated 18 U.S.C. 1962(d) by aiding and abetting the fraudulent mortgage and real estate property sale transactions which were devised by David." (Amended

16

Complaint, ¶89.)  Finally, Plaintiffs make further conclusory allegations on the element of injury: "Plaintiffs were injured as a result of the Defendants' RICO violations and as a result of the aforesaid violations, above named Defendants are liable to Plaintiffs for treble damages pursuant to 18 U.S.C. 1964, and for the relief prayed for below." (Amended Complaint ¶90.)  Plaintiffs do not state their injury or specify the proximate cause for their injury.

Plaintiffs cite to the conspiracy section of the statute, 18 U.S.C. §1962(d), but make no allegations whatsoever as to conspiracy.  Plaintiff's Amended Complaint states:  "The above named Defendants, have violated 18 U.S.C. 1962(d) by aiding and abetting the fraudulent mortgage and real estate property sale transactions which were devised by David." (Amended Complaint, ¶89.)

18 U.S.C. §1962(d) provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Plaintiffs have failed to allege any conspiracy against Dy. For RICO conspiracy to be alleged, a plaintiff must state must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose. Additional elements include agreement to commit predicate acts and

17

knowledge that the acts were part of a pattern of racketeering

activity.  <u>Glessner v. Kenny</u>, 952 F.2d 702, 714 (3d Cir.1991),

abrogated on other grounds recognized by, <u>Jaguar Cars, Inc. v.</u>

<u>Royal Oaks Motor Car Co., Inc</u>., 46 F.3d 258 (3d Cir.1995).

Plaintiffs have failed to state a claim for violation of

RICO against Dy, requiring dismissal of Count VI against Dy.

18

POINT VI

**COUNTS SEVEN, EIGHT, AND NINE OF PLAINTIFFS' AMENDED
ADVERSARY COMPLAINT FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN
BE GRANTED AGAINST ALEXANDER DY**

Plaintiffs have utterly failed to make out a case for the torts of intentional misrepresentation (Count VII), conversion (Count VIII), and infliction of emotional distress (Count IX) against Alexander Dy.

**A.    Plaintiffs Failed to Plead Any Intentional
Misrepresentation Against Dy**

As an initial matter, Pursuant to Fed. R. Civ. P. 9(b), made applicable by Fed. R. Bankr. P. 7009, a plaintiff is required to "state with particularity the circumstances constituting fraud...."  Yet, Plaintiffs have failed to make any allegation against Dy as to any statement Dy made prior to the closing on the sale of the Property on August, 24, 2006 (See Amended Complaint, ¶34) much less any false statement, or intentionally false statement.

Plaintiffs have failed to plead any of the elements of Intentional misrepresentation against Dy.  The five elements of common law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.  <u>Gennari</u>, 148 N.J. at 610.

19

Plaintiffs plead none of these elements nor could they.
Assuming there were any misstatement made, the Plaintiffs could
hardly plead reasonable reliance, as the Plaintiffs admit in
their Amended Complaint that the "mortgage rescue" transaction
with Dy was not their first.  They previously transferred the
Property to the Scotts (parents of Pamela Peters) when the
Property fell into foreclosure in 2004, and then the Property
was transferred back to the Peters in 2005.

**B.    Plaintiffs Failed to Plead a Case For Conversion Against Dy**

Generally, the gravamen of the tort of conversion consists
of the wrongful exercise of dominion and control over property
owned by another in a manner inconsistent with the owner's
rights.  Commercial Ins. Co. of Newark v. Apgar, 111 N.J. Super.
108, (Law Div. 1970).  The Amended Complaint admits that the
Peters deeded over the Property to Dy.  Plaintiffs have not, and
cannot, allege that Dy exercised dominion and control over the
Property in a manner which is inconsistent with Plaintiffs'
transfer of the Property to Dy.

**C.    Plaintiffs Failed to Plead a Case for Intentional
        Infliction of Emotional Distress Against Dy**

The Elements of claim for tort of intentional infliction of
emotional distress are (1) that the actor intended to inflict
emotional distress or that he knew or should have known that
emotional distress was the likely result of his conduct, (2)

20

that the conduct was extreme and outrageous, (3) that the actions of the defendant were the cause of the plaintiff's distress, (4) that the emotional distress sustained by the plaintiff was severe.  <u>Young v. Hobart West Group</u>, 385 N.J. Super. 448, 467-468 (App. Div. 2005).  Plaintiffs have failed to make any allegations against Dy which support this cause of action.

Accordingly, Counts VII, VIII and IX of the Amended Complaint should be dismissed as against Alexander Dy.

**CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed against Dy with prejudice in its entirety.

                    Respectfully,

                    Hartman & Winnicki, P.C.
                    Attorneys for Defendant
                    Alexander Dy


                    By: /S/Richard L. Ravin

22

# EXHIBIT "A"

# EXHIBIT "A"

Law Office of Shmuel Klein, PC
113 Cedarhill Avenue
Mahwah, New Jersey 07430
201-529-3411
Attorney for Plaintiffs

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

--------------------------------------------X     No. 07-23531 (RG)
In RE:
HENRY PETERS, PAMELA PETERS
Debtors
--------------------------------------------X     Adv No. 07- 02219(RG)

HENRY PETERS, PAMELA PETERS                       :
        PLAINTIFF                                 **AMENDED COMPLAINT FOR
                                                  VIOLATION OF RESPA AND
                                                  TILA**

-AGAINST-

ROLAND DAVID, NATIONAL COMMERCIAL
BUSINESS CREDIT,
R. DAVID & ASSOCIATES, PA, LLC
FINANCIAL SERVICES GROUP, LLC
CREDIT MANAGEMENT & RECOVERY
SERVICES, INC., GOLDSTAR MORTGAGE,
ALEXANDER DY, PNC BANK,
CAROL ZAGORIC, JOANNE RAGGI,                      **TRIAL BY JURY**
FGC COMMERCIAL MORTGAGE FINANCE,
JOURNEYMAN TITLE AGENCY**,** INC.,
CHICAGO TITLE INSURANCE COMPANY
LYNN LAZARO,
JOHN DOE 1-10, XYZ, INC 1-10  :
ten names being fictitious and
unknown to the plaintiffs, the person
or parties intended being the persons
or parties, if any,
        DEFENDANTS.                   :
--------------------------------------------X

        Plaintiffs, Henry Peters and Pamela Peters ("Mr. and Mrs. Peters"), complain as

follows against defendants Alexander Dy ("Mr. Dy"), Roland David ("Mr. David"),

National Commercial Business Credit ("National Commercial Business Credit"), R.

David & Associates, PA, LLC ("R. David & Associates") Financial Services Group, LLC

("Financial Services Group") Credit Management & Recovery Services, Inc., ("Credit

Management & Recovery") Gold Star Mortgage,( "GoldStar Mortgage") FGC

Commercial Mortagage Finance ("FGC "), Carol Zagoric ("Zagoric") Joanne Raggi,

("Raggi") Journeyman Title Agency Inc., ("Journeyman Title") Chicago Title Insurance

Company ("Chicago Title")  Lynn Lazaro ("Lazaro") and PNC Bank ("PNC Bank"):

## <u>INTRODUCTION</u>

1.      This is a complaint challenging the validity of the Defendant Alexander

Dy's ownership interest in the property of the Estate to which the Peters claim ownership.

Defendant Dy claims that the Peters are rental tenants with an option to repurchase. This

action is brought pursuant to the truth in lending act, TILA, 15 U.S.C. §§ 1601-1666j.

Plaintiffs challenge the validity of the entire transaction, and seek to rescind the

transaction and void the deed transferring the house to Dy and to have the property

returned to them pursuant to 11 U.S.C. § 550, and pursuant to their rescission rights

under the TILA.

2.      This action seeks redress for fraud and deceptive practices committed by

the above named Defendants in connection with the financing of a home mortgage

"rescue" transaction. Plaintiffs allege that the defendants, operating in conjunction with

home mortgage "rescue" brokers, appraisers, title insurance agents and underwriters

arranged to procure Plaintiff's signatures on purportedly binding conveyances and leases,

which contain clauses authorizing a supposed buy-back of their property at an inflated

price far above market value and at an inflated rent also far above market value creating

an inevitable default of the Plaintiffs; defendants nearly succeeded evicting the Plaintiffs

from their home.

     3.    Plaintiffs seek a determination that the Property, now technically titled in

Dy's name, is subject to their rescission rights, that the deed is void and the Plaintiffs are

the rightful owners of the property, that Dy has no claim in the property of the estate, and

an Order quieting title be entered to Mr. & Mrs. Peters free and clear of encumberments,

claims or liens. Additionally Plaintiffs seek actual and punitive damages for defendants'

numerous violations, as described below.

     4.    Plaintiffs allege, that the facts complained of herein violates the Truth in

Lending Act ("TILA"), 15 U.S.C. §1601 et seq. (Count I) the New Jersey Consumer

Fraud Act ("CFA"), NJ.Rev.Stats., 56:8-2., (Count II), the New Jersey Consumer Fraud

Act ("CFA"), NJ.Rev.Stats., 56:8-2.2 (Count III) the New Jersey Consumer Fraud Act

("CFA"), NJ.Rev.Stats., 56:8-2.22 (Count IV) RESPA (Count V ) RICO, 18 U.S.C. 1962

(Count VI). Plaintiffs assert the common law claims of Intentional Misrepresentation,

(Count VII), Conversion, (Count VIII), and Infliction of Emotional Distress (Count IX).

Plaintiffs also assert an individual claim for rescission and quit title transfer of the deed.

## JURISDICTION AND VENUE

     5.    This Court has subject matter jurisdiction over all causes of action stated

in this complaint pursuant to 28 U.S.C. §§ 1334 and  28 U.S.C. §157.

     6.    This is a core proceeding regarding property of the estate.

## PARTIES

     7.    Mr. and Mrs. Peters own and reside in a home at 10 Ashby Lane, Unit G

Bldg.15, Newark, New Jersey.

8.   Mr. Dy operates a business at 93 Main Street, Ridgefield Park, New Jersey.

9.   FGC Commercial Mortgage Finance, d/b/a Fremont Mortgage is a California

Corporation with an address at 2727 East Imperial Highway, Brea, California, and does

business in New Jersey and in this district.

10.   PNC Bank is a banking corporation with its principal place of business

located at One PNC Plaza, Pittsburgh, Pennsylvania, and does business in New Jersey

and in this district.

11.   Roland David is the President and owner of National Commercial &

Business Credit, Inc., R. David & Associates, PA, LLC, Financial Services Group, LLC,

Credit Management & Recovery Services, Inc. with offices located at Empire State

Building, 30 Rockefeller Plaza, New York, New York, 10112, and 17 Woodport Road,

Sparta, New Jersey 07871.

12.   GOLDSTAR MORTGAGE is a mortgage broker, with its office located at

66 York Street, 5th floor, Jersey City, New Jersey 07302.

13.   Carol Zagoric, a/k/a Carolann Zagoric is an employee of Roland David and

was involved in the transaction. Upon information and belief, she resides at 3 Kimberly

Lane, Glenwood, NJ 07418.

14.   Joanne Raggi is an employee of Roland David and was involved in the

transaction. Upon information and belief, she resides in Hamburg, New Jersey.

15.   Ari Milton Brafman as President of Journeyman Title Agency, Inc. with it's

offices being at 918 South Avenue West, Westfield, New Jersey.

16.    Lynn Lazaro is an independent contractor for Journeyman Title and was the closing agent in this transaction, as well as the notary, with an address of 18 White Lake Road, Sparta New Jersey 07871.

17.    Chicago Title Insurance Company insured this title policy. Its office is located at 171 North Clark Street, Chicago, Illinois 60601-3294.

18. John Does are various appraisers and brokers who reside in or around Newark, New Jersey, whose identity is unknown to Plaintiffs at this time but when their identity is discovered, the complaint may be amended to include them as party Defendants.


## ALLEGATIONS/FACTS

19.    The Defendants conspired to and created an enterprise and a scheme to purchase distressed real property from homeowners facing foreclosure.  They offered a "foreclosure rescue" scheme where speculators and a straw person "buy" the property and then, together with brokers, appraisers, title insurance agents and underwriters ("conspirators"), obtain mortgages, arrange for the owner to "buy-back" their home at an inflated price while paying inflated rent.  The scheme is in fact a re-finance of the owner's property at a usurious rate in violation of RESPA, HOEPA, TILA and New Jersey Consumer Fraud laws, lacking any disclosure, redress or legal representation, whatsoever.

20.  In 1997, Mr. and Mrs. Peters, who are African-American senior citizens, purchased their home, located at 10 Ashby Lane, Unit G Bldg.15, Newark, New Jersey for $145,000.00 and entered into a mortgage with Chase Manhattan Bank simultaneously

with the purchase in the amount of $145,000.00 through a Veterans Administration loan.

Mr. Peters served with distinction in the Marines in Vietnam and received an honorable

discharge in 1970. Pamela Peters is disabled since 1996 and receives social security

disability payment and disability payments from her former employer.

21.    In 2004, Mr. Peters became ill, was not able to work and was not able to

afford the mortgage payments. The Property went into foreclosure and the Mr. and Mrs.

Peters filed for Chapter 13 bankruptcy. The case was dismissed.

22. The property was purchased in June of 2004 by Frank and Marilyn Scott, who

are Mrs. Peters' parents, for $204,000.00 and was financed through Greenpoint for

$183,000.00.  The Peters' mortgage was paid off with the new loan of the Scotts.

23.    The deed was transferred back to the Peters' by the Scotts on January 12,

2005.

24.    The Peters continued to reside in the home and paid the mortgage for more

than one year.  However, Mr. Scott became ill and passed away on December 7, 2005 and

Mrs. Scott had a debilitating stroke in February of 2006, which required Mr. & Mrs.

Peters to assist them financially.

25.    On or about March of 2006, the Peters, who were paying the mortgage until

that time did not have the financial resources to continue to pay the mortgage, as the

forced place home insurance raised the payments up from $1,600 dollars to $2,200

dollars per month.  The Peters attempted to make a partial payment in April of 2006;

however, Greenpoint refused to accept payment. The Property went into foreclosure in

June of 2006.

26.   The Peters' where in a very desperate financial situation. Their home was facing foreclosure and they also endured the burden of caring for Mrs. Peters' ill mother. About that time, they where solicited with a brochure in the mail promising them to be rescued from the foreclosure.

27.   They called the number on the brochure and a meeting was set up. The Peter's met with Mr. Roland David, director of National Commercial and Business Credit, Inc. Roland Davis informed the Peters that they have available equity in their home. He proposed a mortgage "rescue" offer to purchase the Peters home, give them cash from the available equity, allow them to lease back their home and eventually re-purchase the home. He told them that monthly payments would be much lower than they where paying at that time and because of the equity they would receive cash. He convinced the Peters' that by accepting his "rescue" scheme they could save money and be able to keep their home.

28.   At no time during this meeting where any details of the price, interest, monthly payments, duration of payments or any other disclosures discussed with the Peters'.

29.   An appraisal was made of the Peters home without ever having seen the home. The Peters' paid for the appraisal and other expenses, which they where told where necessary for the refinancing, in the amount of almost $12,000 dollars.

30.   Defendant Ronald David represented to the Peters' that he would also file their 2003, 2004 and 2005 tax returns which were not filed. Ronald David charged the Peters $500 for each years' State and Federal returns, for a total of $1,500. The Peters paid Mr. David the $1,500. Mr. David gave them the copies of their Federal returns,

however, he failed to file them with the IRS. No State returns were given to the Peters

nor were they filed.

31.   After learning that Mr. David never filed their taxes with the IRS, the Peters'

sent in their copies of the returns for 2003, 2004 and 2005 to the IRS and received a

refund of $6000. They also subsequently filed their State tax returns at their own expense.

32.   Defendant requested that Plaintiffs pay the $6000 they received from the IRS

as a tax refund to him for various costs in association with the mortgage transaction.

Plaintiffs paid the $6000 to Defendant Mr. David. They did not receive any receipt as

proof of payment.

33.   Mr. and Mrs. Peters were then told that the closing would be held on August

30, 2006 at Roland's office in Sparta, New Jersey.

34.   On August 24, 2006, when they arrived to the closing, Mr. and Mrs. Peters

were told to sit in the waiting room.  After about 20 minutes, they were told by Joanne

Raggi, an employee who worked there, and another woman from "FCG Mortgage" (upon

information and belief Lynn Lazaro) to sign a "paper", which turned out to be a deed, to

Alexander Dy, who was the "straw" person who gave the mortgage.

35.   Mr. and Mrs. Peters were told that their financing was completed and that

they could leave.  Mr. and Mrs. Peters repeatedly requested copies of the documents.

They were told that they would be mailed to them.   No copies were ever received.

36.   Mr. and Mrs. Peters were then told to begin paying $3005.07 each month.

37.   After FCG Mortgage and Roland David failed to provide any documents

whatsoever, and calls were not returned, Mr. and Mrs. Peters ceased making payments.

38.    Alexander Dy then called and threatened to evict Mr. & Mrs. Peters. Mr. and Mrs. Peters stated that they had been defrauded and demanded their home back.

39.    Roland then called and offered to sell Mr. and Mrs. Peters their home back for $279,000.00. Dy had already financed their house for $279,000 as a first mortgage, $40,000.00 as a second mortgage and received $19,877.94 from the closing.

40.    Mr. and Mrs. Peters refused to pay the inflated price for their home and demanded return of the funds paid and transfer of the property back to them.

41.    Mr. and Mrs. Peters' were paying $750 a week in rent in order to keep from being evicted. Plaintiffs also paid "Association Fees" to the Condominium Association. Dy & Mr. David promised the Peters' that "Association Fees" would be included in their new mortgage payments, however, Defendants failed to pay anything to the association. The advanced payments ran out and the Peters' had to pay the association fees in order to avoid eviction by the Association.

42.    A title search of the property revealed that the deed between the Peters' and Alexander Dy - which the Peters' where tricked into signing – stated that transfer was made for the sum of $310,000.00. The Peters' never received any funds. Furthermore, the Peters' where tricked into signing a release of the proceeds from the sale of property to Alexander Dy.

43.    Defendants Financial Credit Services, (Roland David), which arranged the loan for Dy through GoldStar Mortgage, misrepresented on the loan application to FGC that Dy had paid the Peters an initial deposit in the amount of $50,000, and that the total contract price would be $320,000.00. The loan application also stated that Dy intended to use the property as his primary residence.

44.     Upon information and belief, all Defendants schemed  and orchestrated this fraudulent transaction or had direct knowledge of the fraud being committed against the Plaintiffs. They were involved in creating and/or executing and/or notarizing the fraudulent documents, obtaining and providing the financing and title, closing the transaction, making unauthorized payments out of the mortgage which Dy obtained on the house, and received disbursements from the mortgage which Dy obtained on the premises, which were not reported on the HUD or TILA statements.

45.     Defendant Dy obtained a second mortgage on the premises in the amount of $40,000.00 while Plaintiffs were current on their monthly $3005.07 "rent" payment, depleting the balance of the equity of the Plaintiffs' home.

46.     Plaintiffs filed a Civil Court Action, case number 07-cv-2210 in the District Court of New Jersey in this matter. Plaintiffs stopped paying the enormous monthly payments since they simply couldn't afford it anymore and because they believe they are the rightful owners of their own home.

47.     Despite knowledge that the Peters filed the District Court complaint, Dy filed a verified Landlord/Tenant complaint in State Supreme Court verifying that no prior action was pending. As a result of the false verification, Dy obtained an eviction judgment against plaintiffs.

48.     Plaintiffs have suffered enormously throughout the entire ordeal.

**COUNT I--TILA**

49.     Plaintiffs repeat and state each and every matter contained in paragraph 1-48 herein.

50.    This is a consumer credit transaction and is subject to the Plaintiff's right of rescission as described by 15 U.S.C. § 1635 and Regulation Z § 226.23 (12 C.F.R. § 226.23). Plaintiffs are Consumers as defined by Regulation Z.

51.    In the course of this consumer credit transaction, Defendants violated 15 U.S.C. § 1635(a) and Regulation Z § 226.23(b) by failing to deliver to the Plaintiffs two copies of a notice of the right to rescind which:

a.        Identified the transaction.

b.        Clearly and conspicuously disclosed the security interest in the Plaintiff's principal dwelling.

c.        Clearly and conspicuously disclosed the Plaintiff's right to rescind the transaction.

d.        Clearly and conspicuously disclosed how to exercise the right to rescind the transaction, with a form for that purpose, designating the address of the Defendant Creditor's place of business.

e.        Clearly and conspicuously disclosed the effects of rescission.

f.        Clearly and conspicuously disclosed the date the rescission period expired.

52.    In the course of this consumer credit transaction, Defendants required Plaintiffs to proceed with the home mortgage "rescue" purchase prior to disclosure of the actual financing terms and failed to deliver any "material" disclosures required by the Act and Regulation Z, including the following:

a.        By failing to properly and accurately disclose the "amount financed," using that term in violation of Regulation Z § 226.18(b) and 15 U.S.C. § 1638(a)(2)(A).

b.      By failing to clearly and accurately disclose the "finance charge," using

that term, in violation of Regulation Z §§ 226.4 and 226.18(d) and

15 U.S.C. § 1638(a)(3).

c.      By failing to clearly and accurately disclose the "annual percentage rate,"

using that term, in violation of Regulation Z § 226.18(e) and 15

U.S.C. § 1638(a)(4).

d.      By failing to properly disclose the number, amounts, and timing of

payments scheduled to repay the obligation, in violation of

Regulation Z § 226.18(g) and 15 U.S.C. § 1638(a)(6).

e.      By failing to clearly and accurately disclose the "total of payments," using

that term, in violation of Regulation Z § 226.18(h) and 15 U.S.C. §

1638(a)(5).

53.    The Plaintiffs have a continuing right to rescind the transaction until the

third business day after receiving both the notice described in paragraph 11 and all

"material" disclosures described in paragraph 12, pursuant to 15 U.S.C. § 1635(a) and

Regulation Z § 226.23(a)(3), up to three years after consummation of the transaction.

54.    The Defendants have failed to take any action necessary to provide Mr. and

Mrs. Peters with the documentation of the "foreclosure rescue" transaction. The practice

complained of is intended to interfere and effectively interferes with and renders nugatory

the right to cancel. Accordingly, plaintiffs continue to have a right to rescind Exhibit B.

55.    The Defendants have failed to return to the Plaintiffs any money or property

given by the Plaintiffs to anyone, including the Defendants, when they where asked by

the Plaintiffs to rescind the transaction. In accordance with 15 U.S.C. § 1635(b) and

Regulation Z § 226.23(d)(2).

56.    As a result of the aforesaid violations of the Act and Regulation Z, pursuant

to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Defendants are liable to Plaintiffs for the

relief prayed for below and the transaction should be rescinded.

**WHEREFORE**, plaintiffs request that the Court enter judgment on each

and every count stated herein in their favor and against defendant;

a.    For a declaration that the Plaintiffs have a continuing right to rescind their

transaction.

b.    For a declaration quieting title to the Plaintiffs free and clear of any lien,

title or Judgment; or providing a procedure to allow the Plaintiffs to exercise their

rescission right.

c.    For any further orders necessary to effectuate the rescission of transactions

by Plaintiffs.

d.    For a declaration that the sales contract title, and lease are viodable and

void.

e.    For actual and compensatory damages.

f.    For punitive damages sufficient to deter further unlawful conduct by

Defendants.

g.    For treble damages pursuant to 18 U.S.C. 1964.

h.    For attorney's fees, litigation expenses and costs.

i.    For such other or further relief as the Court deems appropriate.

## COUNT II -- NEW JERSEY CONSUMER FRAUD ACT NJ.Rev.Stats., 56:8-2.

57.    Plaintiffs repeat and state each and every matter contained in paragraph 1-56 herein.

58.    Mr. Peters is 61 years old and Mrs. Peters is 60. They are Senior Citizens pursuant to the New Jersey Consumer Fraud Act. NJ.Rev.Stats., 56:8-1.

59.    In the course of this "foreclosure rescue" transaction, Defendants violated the New Jersey Consumer Fraud Act ("CFA"), NJ.Rev.Stats., 56:8-2 by the use of fraud, deception, misrepresentation and false promises to the Plaintiffs.

60.    The Defendants have failed to take any action necessary to provide Mr. and Mrs. Peters with the material documentation of the "foreclosure rescue" transaction, as is required by NJ.Rev.Stas., 56:8-2.22. The practice complained of is intended to interfere and effectively interferes with and renders nugatory the right to cancel and rescind the transaction, in accordance with 15 U.S.C. § 1635.

61.    The Defendants led the plaintiffs to believe that they will receive cash equity available in their home after they complete the transaction. They where, however, asked to sign a document stating that they authorize the release of proceeds from the sale of their property to Alexander Dy. They did not receive any proceeds whatsoever.

62.     Plaintiffs paid to Defendant money to hire an appraiser and various other expenses incurred by the Defendant, "supposedly" on behalf of Plaintiffs to aid in the completion of this transaction. Plaintiffs where not provided with the receipts of any monies they expended to Defendant and where never repaid.

63.    An appraiser made an appraisal of the Peters home without ever having seen the home.

64.    The Plaintiffs suffered pecuniary injury as a result of the false statements, which deprived them of their rights to cancel or dispute the contract. The Plaintiffs also suffered excessive aggravation due to monetary damage, and overly inflated rent payments as well as loss of their home.

65.    As a result of the aforesaid violations of NJ.Rev.Stats., 56:8-2, pursuant to NJ.Rev.Stats., 56:8-2.11. NJ.Rev.Stats., 56:8-2.12, and NJ.Rev.Stats., 56:8-19., Defendants are liable to Plaintiffs for the relief prayed for below.

**WHEREFORE**, plaintiffs request that the Court enter judgment on each and every count stated herein in their favor and against defendant;

a.  For a declaration that the Plaintiffs have a continuing right to rescind their transaction.

b.  For a declaration quieting title to the Plaintiffs free and clear of any lien, title or Judgment; or providing a procedure to allow the Plaintiffs to exercise their rescission right.

c.  For any further orders necessary to effectuate the rescission of transactions by Plaintiffs.

d.  For a declaration that the sales contract title, and lease are viodable and void.

e.  For actual and compensatory damages.

f.  For punitive damages sufficient to deter further unlawful conduct by Defendants.

g.  For treble damages pursuant to 18 U.S.C. 1964.

h.  For attorney's fees, litigation expenses and costs.

i.  For such other or further relief as the Court deems appropriate.

## COUNT III  --  NEW JERSEY CONSUMER FRAUD ACT NJ.Rev.Stats., 56:8-2.2

66.    Plaintiffs repeat and state each and every matter contained in paragraph 1-65 herein.

67.    In the course of this "foreclosure rescue" transaction, Defendants violated the New Jersey Consumer Fraud Act ("CFA"), NJ.Rev.Stats., 56:8-2.22 by promising to help the Plaintiffs "rescue" their home so as they will be able to eventually keep their home and be able to afford the payments. They presented the offer scheme by stating that they will buy-out this mortgage and help the Plaintiffs buy the house back with the cash equity that they will obtain. They also promised to give the Plaintiffs a lower rate on their refinancing so that they will be able to afford their mortgage payments in the future.

68.    Defendants' actions, however, where completely different from what they made plaintiffs believe they would do. They transferred Plaintiffs home and did not give them any cash equity, whatsoever, as they had promised. They did not arrange any lower refinance payments for the Plaintiffs as they had promised, but on the contrary required them to pay an inflated rent far above market value and they offered to sell the house back to the Plaintiffs at an inflated price also far above market value creating an inevitable default of the Plaintiffs.

69.    As a result of the aforesaid violations of NJ.Rev.Stats., 56:8-2.2, pursuant to NJ.Rev.Stats., 56:8-2.11. NJ.Rev.Stats., 56:8-2.12, and NJ.Rev.Stats., 56:8-19., Defendants are liable to Plaintiffs for the relief prayed for below.

**WHEREFORE**, plaintiffs request that the Court enter judgment on each and every count stated herein in their favor and against defendant;

a.  For a declaration that the Plaintiffs have a continuing right to rescind their

transaction.

b.  For a declaration quieting title to the Plaintiffs free and clear of any lien, title

or Judgment; or providing a procedure to allow the Plaintiffs to exercise

their rescission right.

c.  For any further orders necessary to effectuate the rescission of transactions by

Plaintiffs.

d.   For a declaration that the sales contract title, and lease are viodable and void.

e.  For actual and compensatory damages.

f.  For punitive damages sufficient to deter further unlawful conduct by

Defendants.

g.   For treble damages.

h.  For attorney's fees, litigation expenses and costs.

i.   For Judgment on all claims of the Complaint and for such other or further

relief as the Court deems appropriate.


## COUNT IV  --  NEW JERSEY CONSUMER FRAUD ACT NJ.Rev.Stats., 56:8-2.22

70.     Plaintiffs repeat and state each and every matter contained in paragraph 1-

69 herein.

71.     In the course of this "foreclosure rescue" transaction, Defendants violated

the New Jersey Consumer Fraud Act ("CFA"), NJ.Rev.Stats., 56:8-2.22 by  failing to

take any action necessary to provide Mr. and Mrs. Peters with any "material"

documentation of the "foreclosure rescue" transaction, despite repeated demand from the Plaintiffs to furnish them with the documents.

72.    Plaintiffs paid to Defendant money to hire an appraiser and various other expenses incurred by the Defendant, "supposedly" on behalf of Plaintiffs to aid in the completion of this transaction. Plaintiffs where not provided with the receipts of any monies they expended to Defendant and where never repaid.

73.    The Plaintiffs suffered pecuniary injury as a result of the false statements, which deprived them of their rights to cancel or dispute the contract. The Plaintiffs also suffered excessive aggravation due to monetary damage, and overly inflated rent payments as well as loss of their home.

74.    As a result of the aforesaid violations of  NJ.Rev.Stats., 56:8-2.22, pursuant to  NJ.Rev.Stats., 56:8-2.11. NJ.Rev.Stats., 56:8-2.12, NJ.Rev.Stats., 56:8-2.19. Defendants are liable to Plaintiffs for the relief prayed for below.

            **WHEREFORE**, plaintiffs request that the Court enter judgment on each and every count stated herein in their favor and against defendant;

a.   For a declaration that the Plaintiffs have a continuing right to rescind their
         transaction.

b.   For a declaration quieting title to the Plaintiffs free and clear of any lien, title
         or Judgment; or providing a procedure to allow the Plaintiffs to exercise
         their rescission right.

c.   For any further orders necessary to effectuate the rescission of transactions by
         Plaintiffs.

d.   For a declaration that the sales contract title, and lease are viodable and void.

e.   For actual and compensatory damages.

f.   For punitive damages sufficient to deter further unlawful conduct by

    Defendants.

g.   For treble damages.

h.   For attorney's fees, litigation expenses and costs.

i.   For Judgment on all claims of the Complaint and for such other or further

relief as the Court deems appropriate.

## COUNT V  --  RESPA 12 U.S.C. § 2601 et. seq. Regulation X, C.F.R. § 3500 et seq.

75.    Plaintiffs repeat and state each and every matter contained in paragraph 1-

74 herein.

76.   This is a consumer mortgage related transaction and is subject to the

Plaintiffs' right of action as pursuant to 12 U.S.C. § 2614, Section 16.

77.   In the course of this consumer credit transaction, Defendant Creditors

violated 12 U.S.C. § 2605, by:

a.    Failing to deliver a disclosure to Plaintiffs related to assignment, sale or

      transfer of loan servicing.

b.    Failure to provide any closing documents.

c.    Failure to provide notice to Plaintiffs at least fifteen days in advance, or at

      any time after the transfer containing the required information about the

      transfer.

d.    Failure to establish an escrow account for the proceeds of the sale.

e.    Failure to respond to qualified written request from the borrower.

78.     Plaintiffs never received any documents from Defendant Creditors, relating to the transaction of transfer of mortgage and ownership, despite repeated requests to Defendant Creditors by Plaintiffs to be provided with all documentation related to the transaction of refinance.

79.     Plaintiffs where not provided with any Pre-Settlement Disclosures, such as a Good Faith Estimate, a Special Information Booklet, or a Statement as to whether servicing of the loan may be transferred.

80.     Plaintiffs where not provided with any Settlement Disclosures such as a HUD-1 Settlement Statement, or an Initial Escrow Account Statement.

81.     Plaintiffs where also never provided with any Post-Settlement Disclosures such as an transfer of servicing agreement or and Annual Escrow Statement.

82.     The Defendants led Plaintiffs to believe that they will receive cash equity available in their home after they complete the transaction. They where, however, asked to sign a document stating that they authorize the release of proceeds from the sale of their property to Alexander Dy. They did not receive any proceeds whatsoever.

83.     Plaintiffs where required to sign the closing documents, including agreements to pay inflated monthly charges to Alexander Dy, without ever seeing the actual documentation of the transaction details. They where told that the papers will be mailed to them but they haven't received anything despite making several requests for documents.

84.     Plaintiffs where tricked into the "Foreclosure Rescue" transaction and defrauded of their home by the malicious schemes of Defendants and as a result of the

aforesaid violations of 12 U.S.C. § 2605, Defendants are liable to Plaintiffs for the relief

prayed for below.

WHEREFORE, plaintiffs request that the Court enter judgment on each

and every count stated herein in their favor and against defendant;

a.  For a declaration that the Plaintiffs have a continuing right to rescind their

transaction.

b.  For a declaration quieting title to the Plaintiffs free and clear of any lien, title

or Judgment; or providing a procedure to allow the Plaintiffs to exercise

their rescission right.

c.  For any further orders necessary to effectuate the rescission of transactions by

Plaintiffs.

d.   For a declaration that the sales contract title, and lease are viodable and void.

e.  For actual and compensatory damages.

f.  For punitive damages sufficient to deter further unlawful conduct by

Defendants.

g.   For treble damages.

h.  For attorney's fees, litigation expenses and costs.

i.   For Judgment on all claims of the Complaint and for such other or further

relief as the Court deems appropriate.

## COUNT VI – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS,

## "RICO"  18 U.S.C. 1962

85.    Plaintiffs repeat and incorporate each and every matter contained in

paragraph 1-84 herein.

86.    Plaintiffs assert the following RICO claims as to Defendants: Alexander

Dy, Roland David, National Commercial Business Credit, R. David & Associates, PA,

LLC, Financial Services Group, LLC, Credit Management & Recovery Services, Inc.,

Gold Star Mortgage, FGC Commercial Mortagage Finance, Carol Zagoric, Joanne Raggi

and PNC Bank. Plaintiffs do not assert any Rico claims as to Defendants Journeyman

Title Agency Inc., Lynn Lazaro, or Chicago Title Insurance Company.

87.    Defendants have violated 18 U.S.C. 1962(a) by racketeering, extortion and

defrauding the Plaintiffs in a mortgage and real estate scam transaction, stealing Plaintiffs

ownership and equity in the house.

88.    Defendant Roland David operates numerous Businesses, all of which are

supposed financial consulting, mortgages, Investment, banking, loans, counseling,

bankruptcy and foreclosure specialists, businesses. In reality, Roland David defrauds

people in distressed financial situations out of their homes. Roland David's businesses

are corrupt organizations, all involving extortion.

89.    The above named Defendants, have violated 18 U.S.C. 1962(d) by aiding

and abetting the fraudulent mortgage and real estate property sale transactions which

were devised by David.

90. Plaintiffs were injured as a result of the Defendants' RICO violations and as a

result of the aforesaid violations, above named Defendants are liable to Plaintiffs for

treble damages pursuant to 18 U.S.C. 1964, and for the relief prayed for below.

        **WHEREFORE**, plaintiffs request that the Court enter judgment on each

and every count stated herein in their favor and against defendant;

a.   For a declaration that the Plaintiffs have a continuing right to rescind their

transaction.

b.   For a declaration quieting title to the Plaintiffs free and clear of any lien, title

or Judgment; or providing a procedure to allow the Plaintiffs to exercise

their rescission right.

c.   For any further orders necessary to effectuate the rescission of transactions by

Plaintiffs.

d.   For a declaration that the sales contract title, and lease are viodable and void.

e.   For actual and compensatory damages.

f.   For punitive damages sufficient to deter further unlawful conduct by

Defendants.

g.   For treble damages pursuant to 18 U.S.C. 1964.

h.   For attorney's fees, litigation expenses and costs.

i.   For Judgment on all claims of the Complaint and for such other or further

relief as the Court deems appropriate.

## COUNT VII- INTENTIONAL MISREPRESENTATION

91.   Plaintiffs repeat and incorporate each and every matter contained in

paragraph 1-90 herein.

92.   Defendants have represented to the Plaintiffs that they are merely helping

them regain their house and while getting out of the foreclosure and the large payments.

Defendants did not intend to keep this promise.

93.   Plaintiffs' reliance was reasonable or justifiable in the circumstances.

94. Plaintiffs have suffered damages.

95. Plaintiffs are entitled to relief for misrepresentation.

**WHEREFORE**, plaintiffs request that the Court enter judgment on each and every count stated herein in their favor and against defendant;

a.   For a declaration that the Plaintiffs have a continuing right to rescind their transaction.

b.   For a declaration quieting title to the Plaintiffs free and clear of any lien, title or Judgment; or providing a procedure to allow the Plaintiffs to exercise their rescission right.

c.   For any further orders necessary to effectuate the rescission of transactions by Plaintiffs.

d.   For a declaration that the sales contract title, and lease are viodable and void.

e.   For actual and compensatory damages.

f.   For punitive damages sufficient to deter further unlawful conduct by Defendants.

g.   For treble damages.

h.   For attorney's fees, litigation expenses and costs.

i.   For Judgment on all claims of the Complaint and for such other or further relief as the Court deems appropriate.

## COUNT VIII - CONVERSION

96.    Plaintiffs repeat and incorporate each and every matter contained in paragraph 1-95 herein.

97.     The Intentional Tort of Conversion is defined as follows: Personal property is "converted" if a person exercises control over an owners personal property in a way that: 1) Is contrary to the owners right to the personal property, or 2) Intentionally destroys or changes the personal property, or 3) Intentionally deprives the owner of possession of the property permanently, or for an indefinite period of time.

98.     Plaintiffs were defrauded of their property by intentional misrepresentation, fraudulent sales contracts, and extortion of Plaintiffs signatures.

99.     Defendants used the equity to pay themselves unwarranted fees which they were not entitled to. Defendants did not report such payments on the HUD statement, or on any of the required material documents.

100.     Defendants intentionally deeded Plaintiffs home in Dy's name and charged an inflated rent price to force the Plaintiffs out of their home.

101.     Defendants intentionally sought to deprive Plaintiffs completely of their home, to eventually evict them and keep their home.

102.     Defendants thereby wrongfully converted Plaintiffs property to its use, inconsistent with Plaintiffs rights to the property and in violation of Federal and New Jersey law.

103.     Plaintiffs were injured as a result of the Conversion by Defendants and as a result of the aforesaid violations, Defendants are liable to Plaintiff the relief prayed for below.

**WHEREFORE**, plaintiffs request that the Court enter judgment on each and every count stated herein in their favor and against defendant;

a.   For a declaration that the Plaintiffs have a continuing right to rescind their

transaction.

b.   For a declaration quieting title to the Plaintiffs free and clear of any lien, title

or Judgment; or providing a procedure to allow the Plaintiffs to exercise

their rescission right.

c.   For any further orders necessary to effectuate the rescission of transactions by

Plaintiffs.

d.   For a declaration that the sales contract title, and lease are viodable and void.

e.   For actual and compensatory damages.

f.   For punitive damages sufficient to deter further unlawful conduct by

Defendants.

g.   For treble damages.

h.   For attorney's fees, litigation expenses and costs.

i.   For Judgment on all claims of the Complaint and for such other or further

relief as the Court deems appropriate.

## COUNT IX - INFLICTION OF EMOTIONAL DISTRESS

104.   The allegations of paragraphs 1-103 in this pleading are incorporated as if

fully rewritten herein.

105.   This claim is for tortuous infliction of emotional distress caused to

Plaintiffs by Defendants.

106.   Defendants' acts as described above were done intentionally with the

purpose of coercing Plaintiffs to hand over their home to Defendants.

107.    During the course of their actions, and subsequent thereto, Defendants have recklessly and/or intentionally caused severe emotional distress to Plaintiffs without protection of law and at a time when they knew or should have known that its actions would do so.

108.    As a direct and proximate result thereof, Plaintiffs were injured and may continue to suffer such injury in the future. Defendants are liable to Plaintiffs the relief prayed for below.

**WHEREFORE**, plaintiffs request that the Court enter judgment on each and every count stated herein in their favor and against defendant;

a.   For a declaration that the Plaintiffs have a continuing right to rescind their transaction.

b.   For a declaration quieting title to the Plaintiffs free and clear of any lien, title or Judgment; or providing a procedure to allow the Plaintiffs to exercise their rescission right.

c.   For any further orders necessary to effectuate the rescission of transactions by Plaintiffs.

d.    For a declaration that the sales contract title, and lease are viodable and void.

e.   For actual and compensatory damages.

f.   For punitive damages sufficient to deter further unlawful conduct by Defendants.

g.    For treble damages.

h.   For attorney's fees, litigation expenses and costs.

      i.   For Judgment on all claims of the Complaint and for such other or further

relief as the Court deems appropriate.




## JURY DEMAND

Plaintiffs hereby demand a trial by jury.



DATED: December 6, 2007
    MAHWAH, NJ      _____/s/_____
                                  Law Office of Shmuel Klein, PC